IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

HOWARD B. DUVALL, et al.,           )
                                    )
        Plaintiffs,                 )
                                    )
vs.                                 )   CIVIL ACTION NUMBER   97-C-0582-W
                                    )
STATE FARM INSURANCE COMPANIES)         97-C-0582-W
et al.,                             )
                                    )
        Defendants.                 )

**MEMORANDUM OPINION**

In this action, plaintiffs Howard B. Duvall and Robin S. Duvall ("the Duvalls") seek damages against their insurers, State Farm Mutual Automobile Insurance Company ("State Farm Mutual"), State Farm Fire and Casualty Company ("State Farm Fire"), and State Farm claim representative Mark Shepard, for defamation of character, breach of fiduciary duty, and fraudulent suppression.[1] The defendants have moved for summary judgment. For the reasons which follow, the motion will be granted.

UNDISPUTED FACTS

In May 1995, the Duvall's automobile was insured by State Farm Mutual. State Farm Fire provided homeowners coverage for them.

---

[1] The Court has previously dismissed the plaintiffs' conversion and fraud causes of action. It has also dismissed "State Farm Insurance Companies" and Rene Patterson as defendants.

On May 12, 1995, as she dropped off one of their children for school, Robin Duvall and her minor daughter Jennie were involved in a serious automobile accident. Both Robin and Jennie Duvall were injured and required hospitalization. The car was so severely damaged that it was a total loss. At the time of the accident, two cameras, cookies, a purse, and clothes were in the Duvall car. Robin Duvall was wearing a wrist watch, earrings, and a tennis bracelet which had been given to her as a Christmas present by her husband.

The Duvalls subsequently recovered all of the personal property in the car at the time of the accident, except the tennis bracelet. The wrist watch was damaged. It fell off Robin Duvall's arm either as a result of the impact or as she was being transported by paramedics to the hospital. The video camera was also damaged.

No one knows what happened to the tennis bracelet. It may have been ripped off Susan Duvall's arm when the air bag inflated. It may have been dislodged onto the street as she was being removed from the car. Howard Duvall testified:

> when I arrived at the wreck, there was glass all over the place and they were trying to sweep up the street and there were all kinds of people standing around the automobile. And they were loading my wife up at that time in the ambulance.

2

Deposition of Howard B. Duvall, p. 48. He did not think that the bracelet had been stolen: "[i]t may have been swept up in the street." Id.

Following the accident, the Duvalls made a claim under their automobile policy for the personal property losses, including the missing tennis bracelet. The State Farm Mutual policy does not cover such losses.

The Duvalls were then advised by a State Farm agent to file the claim for the lost items of personal property under the homeowners policy.[2] Mark Shepard handled the claim. State Farm Fire paid for the damaged video cameras and watch. It also paid the claim for the tennis bracelet.

The Duvalls subsequently settled their negligence claim against the driver of the other vehicle and his insurance company for $20,000. They settled their underinsured motorist claim with State Farm Mutual for $100,000.

Insurance companies, including State Farm, report claim information on insureds to the Claims Loss Underwriting Exchange ("CLUE"), a division of Equifax Property and Casualty Insurance Services. CLUE is a subscription service. CLUE provides an Underwriters User Guide, which contains an "Appendix A." Appendix A categorizes and defines various codes to describe causes of loss.

---

[2] The homeowners policy lists as optional coverage "jewelry and furs" as well as "firearms."

Appendix A lists 27 different codes for cause of loss of personal property. These "Loss Codes" represent the most common, applicable codes to describe causes of loss." Id., A1. Four of these codes may possibly be appropriate to describe the cause of the loss of the Duvalls' tennis bracelet:

> DISAP - Mysterious Disappearance. Loss which result from the vanishing of an insured's property in an unexplained manner. Differs from theft/burglary in that with mysterious disappearance no evidence of theft is present.
>
> OTHER - All Other. All other losses not described above, including but not limited to collapse, falling objects, weight of snow/ice.
>
> PHYDA - All Other Physical Damage. Losses to real or personal property of the insured due to any reason not listed above, or in the section titled "EXTENT," Extended Coverage Perils.
>
> THEFT - Theft/Burglary. Losses experienced due to the theft or blurglary of unscheduled personal property; i.e., property not specifically listed or insured under the homeowner policy or any other policy.

Id. Numerically expressed, a mysterious disappearance cause is known as a code 46; an "other" cause is known as a Code 44.

CLUE subscribers may access insureds' claim data of other subscribers, including the number of claims filed by an insured and the causes of the predicate losses. The data is used in making the underwriting decision to issue, or to decline to issue, a policy.

4

When the Duvall claim for the tennis bracelet was paid, the draft indicated that a Code 44 loss was involved. Later, the loss was reflected on State Farm documents as a Code 46.

At the end of the policy period, State Farm Fire did not renew the policy. The non-renewal was based on the Duvall's loss history at State Farm, which included the Code 46 tennis bracelet.

Following State Farm Fire's non-renewal, the Duvalls obtained homeowners coverage from ITT Hartford Insurance Company ("Hartford"). When Hartford thereafter learned, through CLUE, of the Duvalls' loss history with State Farm, it cancelled the policy: "Due to frequency of losses: 5-12-95 PHYSICAL DAMAGE IN MYSTERIOUS DISAPPEARANCE LOSS [THE TENNIS BRACELET], 5-22-94 PHYSICAL DAMAGE LOSS." Notice of Cancellation.

## SUMMARY JUDGMENT STANDARDS

The law governing summary judgment is well settled.

Summary judgment is appropriate where the movant, in this case, State Farm, demonstrates there is no genuine issue as to any material facts and that, based upon the undisputed facts, it is entitled to judgment as a matter of law. See Early v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

State Farm bears the initial burden of establishing the lack of a genuine issue as to any material facts. State Farm must

present evidence showing that there is no dispute of material fact,[3] or that the Duvalls have failed to present substantial evidence to support an element of their claim. There is no requirement, however, "that [State Farm] support its motion with affidavits or other similar materials negating the [Duvall]'s claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If State Farm carries its initial burden, then the Duvalls must come forward with significant, probative evidence demonstrating the existence of a triable issue of material fact. Chanel, Inc. v. Italian Activewear, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991). Merely colorable or insignificantly probative evidence will not suffice to defeat a solidly supported motion for summary judgment. Anderson, 477 U.S. at 249. The Duvalls "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 576 (1986).

Finally, when passing on a motion for summary judgment, the court must view the facts in a light favorable to the non-moving party.

---

[3] A fact is deemed "material" if it may affect the outcome of the litigation. Mulhall v. Advance Sec. Inc., 19 F.3d 586, 590 (11th Cir. 1994), cert. denied, 115 S. Ct. 298 (1994). Thus, the substantive law governing the dispute determines what facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

ANALYSIS

The Duvalls' first remaining claim is defamation by libel.

One of the first elements of a libel claim is false statement. <u>Drill Parts & Serv. Co. v. Joy Mfg. Co.</u>, 619 So. 2d 1280, 1290 (Ala. 1993). The Duvalls contend that the characterization of their claim of a missing tennis bracelet as a "mysterious disappearance loss" was a false statement.

The Duvalls cannot satisfy the falsity element of their libel claim because all the evidence, including the testimony of the Duvalls, compels the conclusion that the loss was precisely what State Farm Mutual characterized it to be. The bracelet was physically positioned on Mrs. Duvall's arm just before the accident; it was not on her arm when she reached the hospital. What happened in the interim is anybody's guess. But two things are clear: (1) the tennis bracelet has disappeared, and (2) the location of the tennis bracelet is unknown, it is a mystery.[4]

As the undisputed facts show, the term "mysterious disappearance loss" was not minted by State Farm. It is commonly used in the insurance industry. In a case binding on this

---

[4] The dictionary definition of "mystery" includes "something that has not been or cannot be explained, that is unknown to all or concealed from some and therefore exciting curiosity or wonder." Webster's Third International Dictionary Unabridged (1976).

court,[5] our predecessor circuit recognized the phrase and its meaning. Coastal Plain Feeders, Inc. v. Hartford Fire Ins. Co., 545 F.2d 448, 452 n.8. (5th Cir. 1977).

The Duvalls' expert witness opines that the use of Code 46 mysterious disappearance, was "incorrect and improper," and that the "Other" Loss Code should have been used. Affidavit of Jack Taylor, Ph.D. But by its terms, the "Other" Loss Code should be used for "[a]ll other losses not described above." Appendix A, supra. And the mysterious disappearance Loss Code is described above the "Other" Loss Code. The expert does not dispute that Loss Code 46 is widely recognized and utilized in the industry; or, for that matter, that the missing tennis bracelet was a "mysterious disappearance," within the meaning of the industry definition.

State Farm is clearly entitled to judgment as a matter of law on the defamation claim.

BREACH OF FIDUCIARY DUTY AND FRAUDULENT SUPPRESSION

The legal basis of the Duvall's claim of breach of fiduciary duty is unclear. Apparently they seek to extend the tort of bad faith denial of an insurance claim, citing Koch v. State Farm Fire & Cas. Co., 565 So. 2d 226 (Ala. 1990), and Surrett v.

---

[5] Bonner v. Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

TIG Premier Ins. Co., 869 F. Supp. 919 (M.D. Ala. 1994). To the extent relevant, Koch is strictly a bad faith denial case, in which the court expressly articulates "an intentional refusal to pay [the] claim" as one of the elements of a plaintiff's burden of proof. Koch, 565 So. 2d at 229 (emphasis added). The Duvalls have not cited any authority for the proposition that under Alabama law, the "insurer's duty of good faith and fair dealing implied by law" exists in contexts other than the bad faith denial of an insurance claim.

Surrett is fatal to the Duvall's claim of fraudulent suppression. This claim is predicated on § 6-5-102 of the Alabama Code (1975), which provides that "suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." The Duvalls contend that State Farm Fire had a duty to disclose that if they filed their claim for their missing tennis bracelet, their homeowners policy would not be renewed.

It is undisputed that under the terms of the homeowners policy, upon giving 30 days' notice prior to the expiration date of the policy, State Farm was entitled to non-renew the policy without restriction.

Surrett correctly recognizes that in determining whether particular circumstances give rise to a duty to disclose, the relation of the parties, the value of the particular fact suppressed, the relative knowledge of the parties, and other circumstances should all be considered. See Surrett, 869 F. Supp. at 923.[6]

There is no substantial evidence either of a confidential relationship between the Duvalls and State Farm or particular circumstances giving rise to a duty to disclose. On the issue of whether or not to file a claim, the Duvalls and State Farm Fire dealt at arm's length. Surely the Duvalls must have known that insurance companies consider the loss history of insureds in determining whether or not to renew the policy. It is common knowledge that where an insured has not filed claims with is insurer in the ordinary course of things, his policy most likely will be renewed and her rates are less likely to increase. Concomitantly, the policy of an insured who files a multiplicity of claims during the policy period is less likely to be renewed and more likely to be subjected to increased rates.

---

[6] The Duvalls incorrectly state that Surrett "clearly holds that whether a confidential relationship exists in an insurance setting between a company and its policy holder is a question of fact for a jury." Plaintiffs' Memorandum Brief In Opposition, p. 15. Surrett notes that "[w]hile this issue is generally for the jury to decide, where the plaintiff presents no proof of a duty to disclose, summary judgement is appropriate." Id. at 923 (citation omitted).

While the plaintiffs' position would not necessarily expose State Farm Fire to liability for economic duress,[7] it may well place State Farm in an untenable position. For on the one hand, State Farm has a duty to pay valid claims of its insureds. But plaintiff's position would require State Farm to caution each policyholder with a valid claim that if the claim is paid, the policy may not be renewed or the rates may increase. Without doubt, such admonitions would have a chilling effect on the filing of valid claims. And in our litigious society, such admonitions might well be viewed as a constructive bad faith denial of a claim or an implied threat against an insured who simply used the policy for the very reason it was purchased.

In sum, considering the undisputed facts in a light most favorable to the Duvalls, the court finds no substantial evidence which would support a reasonable jury's verdict for the Duvalls on their claim of fraudulent suppression.

## CONCLUSION

By separate order, State Farm's motion for summary judgment will be granted.

---

[7] Ponder v. Lincoln Nat. Sales Corp., 612 So. 2d 1169, 1171 (Ala. 1992).

DONE this 12th day of May, 1998.

                                                              UNITED STATES DISTRICT JUDGE
                                                                        U. W. CLEMON